UNITED STATES, Appellee

v.

Lavaughn K. KEY, Airman First Class
U.S. Air Force, Appellant

No. 01-0646

Crim. App. No. S29751

United States Court of Appeals for the Armed Forces

Argued February 6, 2002

Decided August 30, 2002

GIERKE, J., delivered the opinion of the Court, in which EFFRON
and BAKER, JJ., joined as to Part I, and CRAWFORD, C.J., and
SULLIVAN, S.J., joined as to Part II.  CRAWFORD, C.J.,
EFFRON and BAKER, JJ., and SULLIVAN, S.J., each filed
an opinion concurring in part and in the result.

Counsel

For Appellant:  Captain Kyle R. Jacobson (argued); Lieutenant
Colonel Beverly B. Knott and Lieutenant Colonel Timothy W.
Murphy (on brief).

For Appellee:  Major Jennifer R. Rider (argued); Colonel Anthony
P. Dattilo and Major Lance B. Sigmon (on brief).

Military Judge:  Robert G. Gibson, Jr.


**This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of three specifications of making false military identification cards and two specifications of selling false military identification cards, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 USC § 934. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for two months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 55 MJ 537 (2001).

Appellant was sentenced on October 20, 1999. Because his sentence included a punitive discharge and confinement, a forfeiture of two-thirds of his pay automatically went into effect by operation of law 14 days after the sentence was adjudged. See Art. 58b(a), UCMJ, 10 USC § 858b(a).

On October 29, 1999, appellant signed a request for deferment of his reduction in grade and automatic forfeitures, to "allow him to continue meeting his child support duties for his 2-year-old daughter." The request was not received in the base legal office until November 3, 1999. The staff judge advocate (SJA) served his recommendation (SJAR) on trial defense counsel on November 2, 1999, the day before appellant's request for deferment was received. On November 8, the SJA transmitted appellant's request for deferment to the convening authority with a written recommendation to disapprove the request, for the following reasons:

2

> Albeit A1C [Airman First Class] Key's financial
> situation is in itself uncomfortable, the fact remains
> that A1C Key's situation is one of self-infliction.
> Likewise, in regard to his inability to provide
> financial support for his dependents, A1C Key did not
> attach financial statements or any other supporting
> evidence to substantiate his request.

The SJA did not serve this recommendation on appellant. The
convening authority denied the request for deferment on November
8, 1999.

Appellant waived his right to submit matters in response to
the SJAR. The SJA did not submit an addendum. On November 19,
1999, the convening authority approved the adjudged sentence, as
recommended by the SJA.

In a post-trial affidavit, appellant stated, "I do not
recall that [the two appointed military defense counsel] ever
advised me that I could request waiver of automatic forfeitures
for my daughter."

On appellant's petition, this Court granted review of two
issues:

> I. WHETHER IT WAS ERROR FOR THE STAFF JUDGE ADVOCATE TO NOT
> SERVE A LEGAL REVIEW OF APPELLANT'S REQUESTS FOR DEFERMENT
> OF REDUCTION IN RANK AND FOR DEFERMENT OF FORFEITURES ON
> APPELLANT FOR COMMENT.
>
> II. WHETHER TRIAL DEFENSE COUNSEL'S FAILURE TO ADVISE
> APPELLANT OF HIS OPTION TO REQUEST WAIVER OF AUTOMATIC
> FORFEITURES IN FAVOR OF HIS DEPENDENT OR TO SUBMIT SUCH A
> REQUEST ON HIS BEHALF CONSTITUTES INEFFECTIVE ASSISTANCE OF
> COUNSEL.

For the reasons set out below, we affirm.

## I.  SJA's Failure to Serve Appellant

Appellant asserts that the SJA's failure to serve him with a
copy of the legal review of his deferment request, thereby
depriving him an opportunity to respond, was error. He asserts

that "[a]ny legal review of a case for the convening authority, including those of forfeiture waiver requests, prepared after the SJAR is served on appellant should be treated as an addendum to the original SJAR and served on appellant for comment." Final Brief at 6, quoting United States v. Spears, 48 MJ 768, 776 (A.F.Ct.Crim.App. 1998). The Government argues that there was no requirement to serve the SJA's review of the deferment request. The Government also argues that, even if the SJA's review was the equivalent of an addendum, service on appellant was not required because the SJA's review did not contain inflammatory comments or new matter.

Whether there is a legal requirement to serve the SJA's recommendation on a deferment request, and whether the SJA's recommendation contained "new matter," are issues of law that this Court reviews de novo. United States v. Chatman, 46 MJ 321, 323 (1997); 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review, § 7.05 (3rd ed. 1999).

Article 57(a)(2), UCMJ, 10 USC § 857(a)(2), authorizes a convening authority to defer forfeitures or reduction in grade on application of an accused. See also Art. 58b(a)(1). The convening authority "may, upon written application of the accused, at any time after the adjournment of the court-martial, defer the accused's service of a sentence to confinement, forfeitures, or reduction in grade that has not been ordered executed." RCM 1101(c)(2), Manual for Courts-Martial, United

4

States (2000 ed.).[1] An accused has the burden of showing entitlement to deferment. RCM 1101(c)(3). The convening authority's action on a request for deferment "shall be subject to judicial review only for abuse of discretion." Id. A deferment request and the convening authority's action on it must be attached to the record of trial. RCM 1103(b)(3)(D) and 1103(c)(1).[2]

Article 60(d), UCMJ, 10 USC § 860(d), requires that the SJAR be served on the accused. Article 60(d) does not mention addenda to a SJAR. However, RCM 1106(f)(7) specifically requires service on the accused and counsel whenever "new matter" is introduced in an addendum. The non-binding Discussion of RCM 1106(f)(7) explains:

> "New matter" includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed. "New matter" does not ordinarily include any discussion by the staff judge advocate or legal officer of the correctness of the initial defense comments on the recommendation.

In Chatman, supra, this Court established a requirement that, when an appellant complains about the failure to serve "new matter," the appellant must "demonstrate prejudice by stating what, if anything, would have been submitted to 'deny, counter, or explain' the new matter."

---

[1] All provisions of the Manual are unchanged from those in effect at the time of appellant's court-martial, unless otherwise indicated.

[2] RCM 1103(c)(1) was amended on April 11, 2002, effective May 15, 2002, by Executive Order Number 13262.

In United States v. Brown, 54 MJ 289, 292 (2000), this Court noted the absence of a specific statutory or regulatory requirement to serve a recommendation on a request for deferment of forfeitures.  This Court declined to decide whether there was a requirement for service founded on constitutional due process or statutory interpretation, because the appellant in that case had not demonstrated prejudice.  Id.

Likewise, we need not reach the constitutional or statutory interpretation issues in this case, because we hold that the SJA's comments were not "new matter."  The SJA's first comment about appellant's self-inflicted financial situation was a statement of the obvious.  The SJA's comment about the absence of supporting documentation, in the context of this case, did not inject anything from outside the record.  It was merely a non-inflammatory observation about the contents of the request.  In our view, a comment about the absence of documentation falls in the same category as a comment about "the correctness of the initial defense comments on the recommendation," addressed in the Discussion of RCM 1106(f)(7), supra.

## II.  Ineffective Assistance of Counsel

Appellant claims that his two military defense counsel were ineffective because he does not recall them advising him about the possibility of requesting waiver of forfeitures.  This court reviews claims of ineffective assistance of counsel de novo. United States v. Wiley, 47 MJ 158, 159 (1997).

Strickland v. Washington, 466 U.S. 668, 687 (1984), established a two-part test for ineffective assistance of counsel: an appellant must show deficient performance and

prejudice. There is a "strong presumption" that counsel are competent. Id. at 689. Broad, generalized accusations are insufficient to satisfy the first prong. See United States v. Moulton, 47 MJ 227, 229-30 (1997). In United States v. Lewis, 42 MJ 1, 6 (1995), this Court stated:

> [T]rial defense counsel should not be compelled to justify their actions until a court of competent jurisdiction reviews the allegation of ineffectiveness and the government response, examines the record, and determines that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence.

We hold that appellant's assertion, that he does not recall being advised of his right to request a waiver of forfeitures, falls short of the Lewis standard for compelling defense counsel to justify their actions. Appellant's assertion is too equivocal and ambiguous to overcome the presumption that his counsel were competent.

Even assuming, arguendo, that appellant's equivocal affidavit satisfies Strickland and Lewis, appellant has not established prejudice. We agree with the court below that there was no reasonable likelihood that the convening authority would have granted a request to waive the forfeitures for the benefit of appellant's child after he denied a request to defer the forfeitures for the same purpose. See 55 MJ at 545. Furthermore, although appellant asserts that he would have requested a waiver of forfeitures if he had been advised of his right to do so, he has failed to provide the court below or this Court with any offer of proof regarding what he would or could have submitted to support his waiver request. See United States v Pierce, 40 MJ 149, 151 (CMA 1994) ("[v]ague or general

7

intimations" about the "particular nature of the materials" that would or could have been submitted in clemency petition insufficient to show prejudice); see also Moulton, supra at 230 ("When factual information is central to an ineffectiveness claim, it is the responsibility of the defense to make every feasible effort to obtain that information and bring it to the attention of the appellate court.").

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Key, No. 01-0646/AF

CRAWFORD, Chief Judge (concurring in part and in the result):

When, as in this case, an appellant is represented by counsel, has notice of the convening authority's action, and takes no further action for months, there is no violation of due process. Generally, a litigant should raise an issue when there is a timely opportunity to respond and take action if appropriate. Cf. Johnson v. Garber, 73 F. 523, 524-25 (6th Cir. 1896)("[A] court of error cannot consider an exception [to the indictment] which was not tendered at the time of the ruling of the trial court[.]"). The common law concept of waiver is not new and applies to almost every area of the law and nearly every right. See, e.g., RCM 903(e), 905(b), 905(e), 907(b)(2), 1106(f)(6), Manual for Courts-Martial, United States (2000 ed.);[1] Mil.R.Evid. 103, 305(g), 311(e), 321(g), Manual, supra; cf. RCM 1101(c)(7)(B) (request for reconsideration).

There is no requirement that a Staff Judge Advocate's (SJA) recommendation on a request for deferment be served on an appellant or his defense counsel. This Court is once again crossing over the boundary of the doctrine of separation of powers and engaging in judicial rule-making by converting the Manual rules on "new matter" (RCM 1106(f)(7)) to new rules on requests for deferment. If we are truly a court of law, we

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

should apply the existing rules and leave promulgation of new rules to the President. It is not the role of a court to impose new rules and ignore the long-established common law rules concerning waiver. Rather than devising a new rule, this Court should adopt as suitable analogues the existing rules that pertain to recision of deferment.

It matters how we decide cases. Appellant is not left without a right. His due process rights have not been abridged. Our Court is part of the "majoritarian process. That is, the elected representatives of Congress, in consultation with the Executive branch, have the power to make any necessary changes" that may be needed. United States v. Weiss, 36 MJ 224, 239 (CMA 1992)(Crawford, J., concurring in the result). As Chief Justice Marshall stated: "The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law...." Wayman v. Southard, 23 U.S. 1, 46 (1825). Courts do not make the law. That is left to our elected officials. Jack N. Rakove, Original Meanings: Politics and Ideas in the Making of the Constitution 367-68 (1996).[2] I disagree with those who would argue that

---

[2] There seems to be an unusual pattern to the majority's decision-making this term of Court. The Court is acting as a quasi-administrative body rather than as a court of law. While each individual case standing alone may not appear to be significant, the consideration of all together reveals a disturbing pattern of judicial overreaching unrivaled in the Court's recent history. See United States v. Wiesen, 56 MJ 172 (2001), pet. for recon. denied, 57 MJ 48 (2002); United States v. Spaustat, No. 01-0656, ___ MJ ___ (2002); United States v. Tardif, No. 01-0520, ___ MJ ___ (2002); United States v. Jordan, No. 01-0483, ___ MJ ___ (2002). While my colleagues are

because changes are slow, judges, not the majoritarian process, should be the prime movers of changes to the law.

Appellant's trial was completed on October 20, 1999. On October 29, 1999, defense counsel prepared a request for deferment of the reduction in rank and automatic forfeitures. This request was to allow appellant to continue making child support payments. On October 28, the judge authenticated the record of trial, and on November 2, the SJA completed and served the recommendation on defense counsel. The defense's request for deferment was not faxed to the legal office until November 3. On November 8, 1999, the SJA signed a formal recommendation to the convening authority recommending disapproval of the request for deferment. This recommendation was not served on defense counsel. That same day, the convening authority denied the request, and 11 days later took action affirming the findings and sentence.

The failure to seek reconsideration of the deferment request constitutes waiver. Foremost, appellant was not prejudiced since he only had 20 days left to serve in confinement. He was married, but his wife was an active duty servicemember, presumably drawing full pay and allowances.

---

certainly well intended, they are trying to solve problems through judicial rule-making that can better and more appropriately be resolved by either the Legislative or Executive Branch.

Because he was only subject to partial forfeitures, the remainder of his pay could be given to the children.

While I agree with the majority as to Issue II, I would apply the common law rule of waiver to Issue I.  This concept is not new but was echoed by Francis Bacon's admonition 200 years ago that judges should not make the law because that is for the parliament.  1 Selected Writings of Francis Bacon 138 (Modern Library ed. 1937).

EFFRON, Judge (concurring in part and in the result):

I concur on Issue I.  I concur in the result on Issue II. With respect to Issue II, I would rely solely on the second prong of Strickland v. Washington, 466 U.S. 668, 687 (1984) (absence of prejudicial error).

As noted in Judge Baker's separate opinion, ___ MJ at (2), the full context of appellant's affidavit suggests at least one plausible interpretation that would justify further inquiry as to whether counsel was ineffective.  Under these circumstances -- particularly where it is unnecessary to the decision -- there is no reason to conclude that appellant's affidavit provides an inadequate basis to raise a claim of ineffective assistance of counsel.

The majority opinion refers to that portion of appellant's affidavit in which he stated:

> I do not recall that [my trial defense counsel] ever advised me that I could request waiver of automatic forfeitures for my daughter.

The affidavit, however, contained more than a simple "I do not recall."  Appellant added:

> Had I known that I could have requested a waiver of automatic forfeitures to be paid to [the mother of my child] for the benefit

> of [my child], I would have requested a
> waiver, especially after the deferment
> request was denied.  I also would not have
> waived my right to submit additional matters
> in clemency had I known that I could have
> submitted a waiver request after my
> deferment request had been denied.

Viewed in context, appellant's affidavit constituted more than a mere absence of memory.  Appellant emphasized that he would not have waived his right to submit clemency matters, and would have requested a waiver had he been advised of his right to do so.  This assertion, if unrebutted, would overcome the presumption of competent counsel.  See United States v. Lewis, 42 MJ 1, 6 (1995).

The majority opinion also concludes that because the convening authority denied appellant's deferment request, there is no "reasonable likelihood" that he would have granted a request to waive the automatic forfeitures assessed appellant by operation of statute. ___ MJ at (8).  Although the basis for appellant's prejudice argument -- the need for funds to pay his daughter's child support -- is the same with respect to both deferment and waiver, there are significant differences between a deferment and a waiver.  They involve separate procedures, subject to different requirements.  Each is authorized by separate statutory provisions, and serve distinct, albeit related, purposes.  See Art. 57(a), Uniform Code of Military

2

Justice (UCMJ), 10 USC § 857(a) (provision governing deferments); Art. 58b, UCMJ, 10 USC § 858b (provision governing waivers).

A critical difference is the fact that an accused is the beneficiary of a deferment, whereas his or her dependents are the sole beneficiaries of a waiver. Compare Art. 57(a)(2) with Art. 58b(b). This reflects a deliberate legislative choice. Convening authorities were empowered by Congress with the authority to grant waivers specifically to minimize the adverse effects of automatic forfeitures on dependents. United States v. Brown, 54 MJ 289, 292 (2000). Consequently, it is neither inconsistent nor improbable for a convening authority to approve a waiver of automatic forfeitures after denying a deferment request. The terms "deferment" and "waiver" are not synonymous, and we should not treat them as such for purposes of a prejudice analysis.

*   *   *

In the present case, the staff judge advocate recommended denying appellant's deferment request in part because appellant failed to submit supporting documentation. Appellant could have remedied this deficiency in his waiver request and provided the convening authority with the necessary financial documents. Our Court has emphasized that "we will not speculate on what the

3

United States v. Key, No. 01-0646/AF

convening authority might have done" in acting on an accused's clemency submission.  Id. (quoting United States v. Chatman, 46 MJ 321, 324 (1997)).  Because we do not know the basis for the convening authority's denial of appellant's deferment request,[*] we should not speculate on what the convening authority might have done had the requisite documentation been before him.

In the present case, the deficiency of appellant's position is his failure to establish "some colorable showing of possible prejudice," the low threshold we have established for post-trial, clemency-related errors.  See Chatman, supra at 324; see also United States v. Wheelus, 49 MJ 283, 288-89 (1998).  As noted in the majority opinion, "[v]ague or general intimations" as to the "particular nature of the materials that appellant or counsel would or could have submitted to the convening authority . . . will not suffice" to sustain a claim of ineffective post-trial assistance.  United States v. Pierce, 40 MJ 149, 151 (CMA 1994).  Appellant has had two opportunities -- before this Court and the Court of Criminal Appeals -- to produce the financial records that he claims would sway the opinion of the convening authority, and has presented nothing.

---

[*] The staff judge advocate cited two reasons in his recommendation to deny appellant's deferment request: (1) appellant's financial status, though "uncomfortable," was "self-inflict[ed]," and (2) appellant's failure to provide financial documentation demonstrating his inability to support his dependents.

4

United States v. Key, No. 01-0646/AF

See Brown, supra at 292-93; see also United States v. Moulton, 47 MJ 227, 230 (1997).

BAKER, Judge (concurring in part and in the result):

I concur on Issue I. I concur in the result on Issue II.

In his affidavit, appellant states: "I do not recall that [my trial defense counsel] ever advised me that I could request waiver of automatic forfeitures for my daughter." The majority opinion concludes "[a]ppellant's assertion is too equivocal and ambiguous to overcome the presumption that his counsel were competent." _ MJ at (8). Although a close call, in my view, appellant made a tentative showing of ineffective assistance of counsel, which required the Government to rebut or concede the allegation.

The import of appellant's statement is open to debate. Appellant does not state that counsel did not tell him he could seek waiver as part of his right to submit matters to the convening authority under RCM 1105-06, Manual for Courts-Martial, United States (2000 ed.). He states that he does not recall that counsel did so. On the one hand, appellant's choice of language might reflect hesitance on his part to state as fact something he is confident did not occur, but may not remember with absolute certainty when subject to the penalty of perjury. In other words, he might be saying that he does not believe something

happened, but he does not recall the precise conversation at the time.  This interpretation is enhanced when appellant's first sentence is read with appellant's next sentence:

> I do not recall that [my trial defense counsel] ever advised me that I could request waiver of automatic forfeitures for my daughter.  Had I known that I could have requested a waiver of automatic forfeitures to be paid . . . for the benefit of [my daughter], I would have requested a waiver, especially after the deferment request was denied.

(Emphasis added.)

On the other hand, one might also interpret appellant's statement, as the Court of Criminal Appeals (CCA) did, as conveying uncertainty only as to whether or not he was advised he could seek waiver.  The CCA concluded that appellant did not say "that the defense counsel never advised [him] of the opportunity to request waiver of forfeitures . . . [only] that he cannot recall whether his counsel ever advised him of that opportunity."  The CCA then observed, "At the risk of seeming unreasonably picky, that is a big difference."  55 MJ 537, 545 (2001).  In other words, appellant might have meant that his counsel may have told him, or they may not have told him.  That conveys something less certain than "not recall[ing] that" they told him.  Based on this adjustment in substance and tone, the CCA " ha[d] no difficulty holding the appellant

2

to his own words . . . [since] he fail[ed] to allege that his counsel did not advise him properly." 55 MJ at 545. But the CCA did not, in fact, rely on appellant's own words, nor did the CCA address the relationship between appellant's first sentence and his second sentence in reaching its conclusion.

Lawyers and judges, wherever they might stand or sit, can find sufficient fodder in appellant's word choice to craft an argument one way or the other as to the import of appellant's words. My response to the CCA is why be "unreasonably picky" and semantic when the welfare of a two-year old dependent is involved and such a factual issue is easily resolved with little effort? The Government could have sought and filed an affidavit from defense counsel rebutting appellant's statement. The Government could have sought and filed a copy of defense counsel's standard post-trial briefing sheet, including reference to appellant's right to seek waiver of automatic forfeitures pursuant to Article 58b(b), Uniform Code of Military Justice, 10 USC § 858b(b) (assuming one was used). The Government could have sought and filed defense counsel's memo for the record of their post-trial briefing of appellant (assuming one was made). Judge advocates are prepared to deploy worldwide to afford distant populations

3

an opportunity to find security and realize hope.  I am
confident the judge advocates in this case will take ten
minutes to go to the case file to see if appellant was
advised of his opportunity to seek waiver of automatic
forfeitures for his dependent(s).

* * *

That leaves the question whether appellant, in any
event, could have overcome the presumption that his counsel
were competent.  The Government concedes in its brief that
as a general matter, "a trial defense counsel's failure to
submit a request for deferment or waiver of automatic
forfeitures may constitute ineffective post-trial
representation[.]"  Final Brief at 9.  However, the
Government also concludes that in this case, there is no
possibility of ineffective post-trial assistance because
the military judge did not recommend waiver and appellant
suffered no prejudice since the convening authority had
already considered and declined to defer appellant's
forfeitures.

By definition, assessments of prejudice during the
clemency process are inherently speculative.  They address
possibilities relating to a discretionary act of grace.
Therefore, if there is legal prejudice, it must be found in
(1) the failure to afford an appellant an opportunity to

4

seek waiver pursuant to his statutory Article 58b(b) rights, and (2) a colorable showing of possible prejudice, i.e., some colorable showing that a convening authority would grant clemency in response to the exercise of that right. United States v. Chatman, 46 MJ 321, 324 (1997) (addressing the standard for post-trial relief where new matter is introduced without opportunity for accused's counsel to comment). As this Court has often stated, an accused's best chance for post-trial clemency is the convening authority. United States v. Wheelus, 49 MJ 283, 287 (1998).

There are good reasons to view requests for waiver of forfeitures to benefit dependents as less speculative than other forms of clemency that benefit an appellant. Dependents may themselves be victims, literally in the case of abuse, or collaterally in the case of those who are dependent on the income and benefits associated with the military service of the convicted servicemember. While the clemency decisions of a convening authority may reflect the anger of the community at an appellant's offenses, they may also reflect the care and humanity of the military for those genuinely and innocently in need, including dependents. Appellant may only have thought of his or her dependents upon conviction, but the command is free to

5

think of them before and after conviction as members of the military community and family. That is what Congress intended in providing statutory authority to convening authorities to waive forfeitures and provide pay and allowances to the dependents of the accused. Art. 58b(b).

Accepting the general argument, the immediate question is whether the convening authority's earlier denial of deferment of forfeitures in this case removes the potential for prejudice in appellant's case. On October 29, 1999, defense counsel requested a deferment of rank reduction and forfeitures on behalf of appellant to "allow him to continue meeting his child support duties for his 2-year old daughter." Counsel noted that "[h]e has faithfully upheld his child support duties over the past two years and the mother of his daughter relies on it to take care of their daughter," and that "[i]f this request is granted, A1C Key will be able to receive a higher amount of pay for a longer period of time and thus be able to meet his child support obligation." (Appellant's affidavit states that he provided $321 per month in child support.)

On November 8, the Staff Judge Advocate (SJA) recommended disapproval of this request, stating, inter alia:

6

> . . . the defense asserts that a delay would allow him to continue meeting child support duties for his 2-year old daughter.
>
> Albeit A1C Key's financial situation is in itself uncomfortable, the fact remains that A1C Key's situation is one of self-infliction. Likewise, in regard to his inability to provide financial support for his dependents, A1C Key did not attach financial statements or any other supporting evidence to substantiate his request.

The convening authority denied the deferment request the same day. Appellant subsequently waived his right to submit further clemency matters; however, appellant later declared that "[h]ad [he] known that [he] could have requested a waiver of automatic forfeitures to be paid . . . for the benefit of [his daughter, he] would have requested a waiver, especially after the deferment request was denied." Appellant also stated that "[h]ad [he] known that the Staff Judge Advocate based his denial recommendation on the lack of proof that [he] needed the money both to support [his] daughter [and] to meet [his] other financial obligations, [he] would have provided additional matters with a request for waiver."[*] Id.

---

[*] The record does not reflect that the SJA's recommendation on deferment was provided to appellant at the time the convening authority acted, and this Court has heretofore not found such a requirement for notice and an opportunity to be heard regarding an SJA's recommendation on deferment. See United States v. Brown, 54 MJ 289, 291-92 (2000).

7

There are good reasons why a convening authority might provide a waiver of forfeitures to an A1C appellant for the benefit of a two-year dependent, whether or not child support requirements were in place and met. Such a dependent might well have financial needs beyond $321 a month. And, such a child might well face extraordinary expenses as his or her source of child support transitions from the military to civilian society on the strength of a bad-conduct discharge.

Nonetheless, I agree with the majority. In light of this convening authority's decision on deferment, which was made with knowledge that appellant, an A1C, had a two-year old dependent, there seems no colorable possibility that this convening authority would have granted clemency relief to appellant had he submitted a request for waiver of forfeitures or specific documentation of financial need, beyond the general assertion already contained in his deferment request.

* * *

In sum, I agree with the Government's brief: "[A] trial defense counsel's failure to submit a request for deferment or waiver of automatic forfeitures may constitute ineffective post-trial representation[.]" The tie does not go to the appellate runner when it is the appellant that

8

bears the burden of persuasion.  In this case, appellant made a marginal showing that he was not informed of his right to seek waiver on behalf of his dependents, which should have been addressed by the Government and CCA with more than word-smithing.  Therefore, if resolution of this case depended on prong I of Strickland v. Washington, 466 U.S. 668 (1984), I would have remanded this case for further fact-finding regarding appellant's allegation of ineffective assistance of counsel.  Nonetheless, for the reasons stated above, applicable only to this case and the actions of this convening authority, appellant has not carried his burden on Strickland prong II prejudice.  Therefore, I concur in the result the majority reaches on Issue II.

SULLIVAN, Senior Judge (concurring in part and in the result):

I agree with the resolution of Issue II on the basis that appellant failed to meet his burden to establish ineffective assistance of counsel.  On Issue I, however, I would hold that there was no error in this case.

An adjudged reduction in grade and automatic forfeitures both take effect on the earlier of-

> (A)  the date that is 14 days after the date on which the sentence is adjudged; or
>
> (B)  the date on which the sentence is approved by  the convening authority.

Articles 57(a)(1) and 58b(a)(1), Uniform Code of Military Justice (UCMJ), 10 USC §§ 857(a)(1) and 858b(a)(1).

A military accused, however, can ask the convening authority to defer (or postpone) these punishments until the convening authority approves the sentence.  Articles 57(a)(2) and 58b(a)(1), UCMJ.  Neither Article 57 or 58b provides for a staff judge advocate advice on such a request (but cf. Article 6(b), UCMJ, 10 USC § 806(b)) or, more importantly, for service of such advice on a military accused.  Cf. Article 60(d), UCMJ, 10 USC § 860(d) (providing for service on the accused of the recommendation of the staff judge advocate for final action by convening authority).

In my view, Congress has spoken on the granted issue.  It was well aware of the temporary nature of deferment (see Article 57a(a), UCMJ, 10 USC § 857a(a)) and chose to provide a

streamlined process suited to immediate action by a convening authority unencumbered by the process afforded the accused with respect to a final action.  The President, in RCM 1101(c), Manual for Courts-Martial, United States (1998 ed.), has further delineated the procedure pertaining to deferment by the convening authority, but he too has not required service of advice by the staff judge advocate on the military accused.  In view of the nature of this right (a form of temporary clemency) and the need for immediate action, I see no constitutional defect in this military legal procedure.  See generally United States v. Scheffer, 523 U.S. 303 (1998)