BAKER, Judge,
with whom CRAWFORD, Chief Judge, joins (dissenting):
I disagree with the majority’s application of United States v. Ginn, 47 MJ 236 (1997). Although the affidavits in question pose an apparent factual conflict — a battle of affidavits — appellant’s affidavits are improbable, if not incredible. Therefore, applying the fourth Ginn exception, a DuBay hearing is not warranted to resolve appellant’s ineffective assistance of counsel claim.
In Ginn, this Court concluded that the service appellate court erred by exercising its factfinding power to resolve a conflict between post-trial affidavits from the parties. However, the Court also concluded that a post-trial hearing “is not required in any case simply because an affidavit is submitted by an appellant.” Id. at 248. In particular, the Court enunciated six principles for determining when apparently conflicting affidavits warrant a factfinding hearing, including the fourth principle, which states:
Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole “compellingly demonstrate” the improbability of those facts, the court may discount those factual assertions and decide the legal issue.

Id.

That is what the service appellate court correctly did in this case, 54 MJ 406, finding that “[i]t is plain from the 10 November 1996 ‘supplemental notice’ that the civilian defense counsel was aware of ‘Uncle Bernard’s’ key role in the innocent ingestion defense, aware of the means of reaching him, and yet plainly had decided to frame the defense without ‘Uncle Bernard’s’ participation.” Unpub. op. at 8. As a result, the Court of Criminal Appeals went on to apply Strickland to appellant’s allegation of ineffective assistance of counsel. The court found that defense counsel had made reasonable, tactical choices under the circumstances of appellant’s case, citing to defense counsel’s affidavit, which states:
Tactically, even if “Uncle Bernard” wanted to testify on Sergeant Sales [sic] behalf, I would not have called him as a witness. The testimony of this witness was not merely unhelpful to the defense case, but extremely damaging. Indeed, compelling this witness to testify would have all but guaranteed an allegation of ineffective assistance ....
The majority argues that two areas of affidavit conflict warrant resolution in a Du-Bay hearing. First, whether counsel contacted Mr. Zimmerman (Uncle Bernard). Second, whether Mr. Zimmerman was “willing to testify that he spiked appellant’s drink.” * 56 MJ at 257. Reviewing this case de novo (see United States v. Wiley, 47 MJ *260 158, 159 (1997)), in my view, the appellate filings and record as a whole eompellingly demonstrate the improbability of appellant’s position on these points.
First, appellant’s affidavit makes clear, as did his trial testimony, that he was in touch with his uncle prior to the trial. And yet, Mr. Zimmerman asserts: “If Ray’s lawyer had called and talked to me and informed me when and where the trial was, I would have come and told the truth.” It is improbable to suggest that a willing Mr. Zimmerman was prepared to testify and exonerate appellant, but for want of a phone call from defense counsel he did not do so, when appellant himself was in contact with Mr. Zimmerman and surely knew the when and where of his own trial.
Second, it is equally improbable, given the purported nature of Mr. Zimmerman’s testimony, that appellant would sit through his trial, and, in fact, testify to the military judge (with hearsay objection) that Mr. Zimmerman “admitted to putting coke ...,” without protesting the absence of his uncle at trial. Mr. Zimmerman did not slip past this trial; he was the focal point of the trial.
Third, it is incredible that if Mr. Zimmerman was willing to testify and appellant had requested that his counsel call Mr. Zimmerman, appellant would wait until sixteen months after his conviction to raise such a fundamental issue.
Requiring a hearing in such a context sets the DuBay bar too low, even as the standard for succeeding on an ineffective assistance claim remains very high under Strickland. In DuBay itself, the Court concluded that it was the nature of the conflict in question relating to command control that made a fact-finding hearing necessary. 17 USCMA 147, 149, 37 CMR 411, 413 (1967) (“In the nature of things, command control is scarcely ever apparent on the face of the record, and, where the facts are in dispute, appellate bodies in the past have had to resort to the unsatisfactory alternative of settling the issue on the basis of ex parte affidavits!)]”). In other words, DuBay hearings are not automatic or default remedies for issues raised post-trial.
To be clear, I agree with the premise behind DuBay. The adversarial process, with its cross-examination and demeanor observation, is a better factfinding instrument than appellate review of affidavits. I also believe that as a general matter, the interests of justice are better served by erring on the side of additional factfinding rather than on the side of judicial economy. But there must be structure and discipline to the process, which Ginn seeks to establish, so that courts-martial do not automatically move from findings, to sentencing, to a post-trial DuBay inquiry into counsel’s management of the defense. Using the “Uncle Bernard standard,” it does not strike me as particularly hard to generate battling affidavits on appeal. In a case involving more than one actor, might not the second actor be willing to assert, after the fact, that he was willing to exonerate the accused if only he had been called?
For the reasons stated above, I believe the record eompellingly demonstrates the improbability of appellant’s facts. The Court of Criminal Appeals was correct to proceed to the underlying issue of ineffective assistance of counsel and, applying a de novo standard of review at this level, correct to not second guess defense counsel’s decision not to call Mr. Zimmerman for the tactical reasons readily apparent in all that was said about Mr. Zimmerman at trial.
Therefore, I respectfully dissent.

 At trial, appellant testified that he called his uncle "to find out and he admitted that he had been putting coke ...,” at which point an objection cut off appellant's statement. In his post-trial affidavit, Mr. Zimmerman states that he would have testified he “gave [appellant] the wrong cup.”